IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

EARL BURDETTE
AND CORNELIA FAY PETTIS                                                                PLAINTIFFS

VS                                                               CAUSE NO. 3:13cv314-MPM-SAA

PANOLA COUNTY, MISSISSIPPI, BY
AND THROUGH ITS BOARD OF SUPERVISORS;
PANOLA COUNTY SHERIFF, DENNIS DARBY,
IN HIS INDIVIDUAL CAPACITY AND JOHN DOES 1-10           DEFENDANTS

## COMPLAINT
## TRIAL BY JURY

COMES NOW Plaintiffs, Earl Burdette and Cornelia Faye Pettis, by and through undersigned counsel, and files this Complaint against named Defendants above and unknown Defendants in this action, and in support thereof alleges as follows:

### PARTIES

1. Plaintiff Earl Burdette is an adult resident citizen of Panola County, Mississippi, residing at 358 Henry Harris Road, Batesville, Mississippi 38606. Plaintiff Cornelia Faye Pettis is an adult resident citizen of Panola County, Mississippi, residing at 13212 Old Panola Road, Como, Mississippi 38619

2. Defendant Panola County is a political subdivision of the State of Mississippi and may be served with process by effecting the same upon the Chancery Clerk for Panola County, Mississippi, Jim Pitcock, at the Panola Courthouse, 151 Public Square # A, Batesville, Mississippi. The Panola County Mississippi Sheriff Department is a political subdivision of Panola County, Mississippi. At all times relevant, the Sheriff of Panola County MS and Deputies referenced herein, were elected officials and /or employed as sworn law enforcement officers for the County, and Panola County, Mississippi Sheriff's Department. Said Sheriff and Deputies, were there and then acting within the scope and authority of their employment and office.

3. Defendant Panola County Sheriff, Dennis Darby, individually, is an adult resident citizen of Panola County, Mississippi, and at all times herein the duly elected Sheriff of Panola County, Mississippi, and may be served with process personally or through his duly authorized designee at the Panola County Sheriff's Department, or 151 Public Square # A, Batesville, Mississippi.

4. Defendants John and Jane Does 1-10, whose identities are unknown to the Plaintiffs at this time, are upon information and belief, deputies of the Panola County Sheriff's Department. All allegations and claims asserted herein against the named Defendants are incorporated herein by reference against John and Jane Does 1-10. Said John and Jane Does 1-10 when their identities are known, will be named and joined in this action, if necessary, pursuant to the Mississippi Rules of Civil Procedure.

## JURISDICTION

5. The Plaintiffs herein invoke this Court's federal question jurisdiction pursuant to 28 United States Code §§ 1331 and 1343 to obtain a judgment for the costs of suit, including reasonable attorneys' fees, and damages suffered and sustained by Plaintiffs, and caused by the blatant violation of the rights, privileges and immunities of the Plaintiffs as guaranteed by the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States of America and by the applicable Federal Statutes, more particularly, 42 United States Code §§ 1983 and 1985(3).

## VENUE

Venue is proper in this jurisdiction and district pursuant to 28 United States Code§§ 1391 (b) in that the alleged acts and omissions of the Defendant occurred exclusively within the territorial limits of this judicial district and division.

## FACTS
## EARL BURDETTE

6. Chief, Earl Burdette, prior November 14, 2013, had been in law enforcement for sixteen years. Assistant Chief Cornelia Pitts, prior to the incident of November 14, 2013, had been in law enforcement for twenty three years.

7. Prior to being named as Police Chief of Como, Mississippi, Chief Burdette was employed as deputy with the Panola County Sheriff's Department. During most of the term of his employment, Otis Griffin was the duly elected Sheriff of Panola County, Mississippi. Sheriff Griffin was defeated in the November, 2011 election by current Sheriff, and defendant, Dennis Darby.

8. When Sheriff Darby took office, he ordered Chief Burdette not to communicate with the former Sheriff, Otis Griffin, his former Chief Deputy, or Sheriff Griffin's former secretary. Chief Burdette replied that these individuals were his friends and former co-workers, and that he would treat them as such when not on duty with the Panola County Sheriff's Department. Eventually, Chief Burdette left the employment of the Panola County Sheriff's Department.

9. Following his departure from the Panola County Sheriff's Department, Chief Burdette was offered the position of Police Chief of Como, Mississippi, a municipality located in Panola County, Mississippi. Prior to being offered the position as Police Chief, the Mayor of Como, Mississippi, Everett Hill was told by Sheriff Dennis Darby that if the City hired Chief Burdette, neither he, nor his department would "back up" the City of Como, Mississippi's Police Department. The City of Como, Mississippi, notwithstanding the promise by defendant, Dennis Darby that neither he, nor his office, would provide assistance to the City of Como, Mississippi, hired Plaintiff, Earl Burdette as its Police Chief.

10. The town of Como has a population of approximately 1,265 citizens.

3

11. Plaintiff, Earl Burdette, upon taking the office as Police Chief of Como, Mississippi, took steps to ensure that the citizens of Como, Mississippi were protected with the best available law enforcement personnel and services by contacting the Sheriff of Tate County, Mississippi, Brad Force, and requesting permission to bring his inmates to the Tate County, Mississippi jail, and further, asked Sheriff Force if he and his deputies would back up the Como Police Department, if needed? Sheriff Force agreed to both request.

12. Chief Burdette also contacted Supervisor Special Agent, Peter Clinton of the Mississippi Bureau of Investigation (MBI) of the Mississippi Department of Police Safety, and asked for his agency's help, if needed. Investigator, Clinton agreed that if needed, his agency would provide assistance.

13. On or about November 14, 2013, at approximately 2:15P.M. Chief Burdett received a call from assistant Chief Pettis and was told that there had been a shooting at the Como Apartments in Como, Mississippi. Chief Burdette, who off duty, was at that time cutting fire wood in Batesville, Mississippi.

14. Chief Burdette informed Assistant Chief Pettis that he was leaving Batesville and that he would be headed to the Como Police Station shortly. In route, Chief Burdette called Supervisor Special Agent, Peter Clinton of the MBI for the purpose of seeking his assistance in the shooting investigation. Chief Burdette did not get a response from Investigator Clinton.

15. Chief Burdette then called the Mississippi Highway Patrol Office in Batesville, Miss, and spoke with a secretary. Chief Burdette requested her assistance in locating Supervisor Special Agent, Peter Clinton. She then got in contact with Investigator Clinton, who in turn called and told Chief Burdette that he was sending Agent, Heath Farish to Como.

16. Chief Burdette proceeded to Como Police Station and clocked in. Chief Burdette

4

waited 35 to 40 minutes for the agent to arrive. Chief Burdette called Supervisor Special Agent, Peter Clinton and asked what had happened to the agent. Supervisor Special Agent, Peter Clinton told Chief Burdette the agent had turned around at the request of Sheriff Dennis Darby. Chief Burdette asked Supervisor Special Agent, Peter Clinton if he could intercede and have the agent come to Como? Supervisor Special Agent, Peter Clinton responded that he would have the Agent, Heath Farish turn around and proceed to Como.

17. Shortly thereafter, the Agent, Farish finally arrived at the Como Police Department, whereupon, Chief Pettis told them what information she had gathered about the shooting, and printed off a picture of the shooter.

18. After a witness who had come to the station to give an interview did not show up as promised, Chief Burdette, assistant Chief Pettis and Agent, Farish, decided to go to the scene of the shooting. The scene of the shooting was at Church Street Extended of Como, Mississippi. When they arrived, they found Sheriff Darby and about 15 deputies already stationed near the Church Street location. They were approximately 50 yards from the scene of the shooting.

19. Chief Burdette located the witness, Tracy Wilbourn, and asked if he would accompany him to the Police Station and gave a statement? The witness agreed to go with Chief Burdette.

20. Chief Burdette and the witness got into the patrol car and proceeded to the police station. The witness Tracy Wilbourn, was seated in the front seat as Chief Burdette drove away from the scene, Sheriff Darby called to Chief Burdette to stop. Chief Burdette stopped his patrol car, believing the Sheriff had questions, or was intending to pass on information. When Chief Burdette pulled his vehicle to a stop, Sheriff Darby opened the passenger side door and then stated, "that's my dam witness, we are taking over this case", and attempted by force, to pull the witness out of the vehicle. Chief Darby responded quickly, and prevented him from doing so, by

5

reaching across the witness and closing the passenger door. Chief Burdette then drove the witness to the Como Police Station.

21. When they arrived, Chief Burdette took the witness into the Police Station. Shortly thereafter, and before Chief Burdette could began to question the witness, Sheriff Darby, along with a number of his deputies, barged into the police station, and demanded that the witness, who at that time was not under arrest, nor a suspect, but only there as a cooperating witness, be turned over to him. When Chief Burdette refused, Sheriff Darby became enraged, and used a string of profanity directed at Chief Burdette. In the heat of the exchange, Sheriff Darby, and his deputies forcibly pushed Chief Burdette onto a table, where, Sheriff Darby and a number of his deputies hit and pounded him in his chest and about his body. Assistant Chief Pettis, who had arrived at the station, attempted to pull Sheriff Darby and his deputies off of Chief Burdette, but to no avail. Sheriff Darby continued his assault, as other deputies joined in. One deputy, Emmerly Griffin, jumped up on the desk and began to stump Chief Burdette with her foot. Sheriff Darby, during the siege of the Como Police Station, took Chief Burdett's holstered gun by tearing it off of his waist as he was forcibly held on the desk, and in full assault by the Sheriff's deputies.

22. Chief Burdette, realizing that he could not alone overcome the assault on his person by the Sheriff Darby and his deputies, stopped trying to protect himself and laid motionless on the desk. The Sheriff and his deputies stopped their assault. Thereafter, a deputy placed handcuffs on Chief Burdette, put him in the back of a Panola County Sheriff's patrol car and took him to jail. There, he was placed in a conference room and unlawfully imprisoned and held under guard from 4:00 p.m. to 7:00 p.m.

23. While being held, a County official arrived at the Panola County Sherriff's Department and told Chief Burdette that he was going to get him out.

24. A while thereafter, a deputy came into the room and told Chief Burdette to go to the

6

back of the jail, (the "Sully Port") where someone would pick him up and drive him back to Como. Chief Burdette did as he was instructed, and was driven by a county official back to Como.

25. Defendant, Sheriff Darby and his deputies, through their actions set forth herein, assaulted, and unlawfully restrained, detained, and imprisoned Plaintiffs, Chief Burdette, and Assistant Chief, Pettis in the Como, Mississippi Police Station.

26. Defendant, Sheriff Darby and his deputies, through their actions as set forth herein, unlawfully restrained, detained, and imprisoned Plaintiff, Chief Burdette in the Panola County, Mississippi Sheriff's office.

## FACTS
## CORNELIA FAYE PETTIS

27. At the time of the incident of November 14, 2013, Plaintiff Cornelia Faye Pettis was serving as the Assistant Chief of Police of the town of Como, Mississippi.

28. Plaintiff Pettis, was on duty on November 14, 2013, and responded to a call regarding a shooting at the Como Apartments on that date. On arrival, Assistant Chief Pettis took a report on the shooting and was informed of the suspect's name, and that of a possible witness to the shooting. Assistant Chief Pettis called Plaintiff Chief Earl Burdette, who was off duty at the time, and informed him of the shooting. Chief Burdette advised Assistant Chief Pettis that he was in the woods cutting wood, but that he would leave and meet her at the police station.

29. Soon thereafter, Assistant Chief Pettis arrived at the Como Police Station where she found Chief Burdette and Agent, Farish with MBI waiting. Assistant Chief Pettis told the officers what she knew of the incident, and that a witness had promised to report to the Como Police Station to give an account of what he had seen. They waited approximately 45 minutes, and when the witness did not show up, they then drove to the scene of the shooting, Church Street Extended.

7

30. On arrival, Assistant Chief Pettis observed Sheriff Dennis Darby, along with a number of his deputies stationed approximately 50 yards away.

31. Chief Burdette located the witness and asked him to accompany him to the police station. The witness agreed. The witness got into the passenger side of Chief Burdette's patrol car, and they proceeded to drive towards the police station. Before they could clear the area of the shooting, Sheriff Darby called to Chief Burdette to stop. When Chief Burdette pulled his vehicle to a stop, Sheriff Darby opened the vehicle's passenger side door and attempted to pull the witness out. Before he could do so, Chief Burdette closed the door and drove off, Assistant Chief Pettis, who was in her vehicle, followed.

32. The witness at that time was not a suspect or under arrest. He was a cooperating witness who voluntarily agreed to accompany Chief Burdette to the Como Police station to give a statement.

33. When she arrived at the Como Police station, Assistant Chief Pettis found Chief Burdette and the witness in the booking room. Shortly after she arrived, Sheriff Darby and a number of his deputies burst through the door of the station and into the room where the witness and Chief Burdette were located. Deputy Danny Beavers of the Panola County Sheriff's Department stated to Chief Burdette that the Sheriff could take jurisdiction anytime he wants to, and then threatened to whoop Chief Burdette's "----."

34. Agent, Heath Farish, attempted to intervene at that time, by stating that he was taking over, and that he, the Chief, and the Sheriff were taking the witness to his place.

35. Then, Chief Burdette asked Sheriff Darby for his can of mace back, which had been taken off his desk by the Sheriff. At that time, Deputy Chris Franklin of the Panola County Sheriff's Department grabbed Chief Burdette in the front of his shirt. He was then joined by the Sheriff, and other deputies, who all began to beat, punch and kick Chief Burdette about his body

8

as he was pinned by them on his desk. During the assault, Deputy Emmerly Griffin jumped up on the desk and began to stomp Chief Burdette in his chest with her foot.

36. Assistant Chief Pettis, attempted to assist the chief by pulling the deputies off of him. The deputies then turned on the Assistant Chief Pettis, pushing her with great force against the wall, where she was physically assaulted, held and restrained against her will.

37. Eventually, the Sheriff and his deputies stopped beating Chief Burdette, pulled him off of his desk, placed him in handcuffs, and then took him to jail.

38. The Sheriff and his deputies threaten to arrest assistant Chief Pettis and take her to jail, but did not further detain her after she was released from their custody and forcible detention in the Como Police Station.

39. The Plaintiffs hereby incorporate by reference and re-allege the information set forth in paragraphs 1-36 supra. The Plaintiffs make the following allegations with respect to all Defendants.

40. Defendant Sheriff Darby and his deputies conducted and unlawful seizure and takeover of the Como Mississippi Police Station, and after doing so, executed violent acts on the persons of Chief Burdette and Assistant Chief Pettis, using as a pretext, their right to take custody a private citizen of Como, Mississippi, who was in the station as an invitee only.

## DAMAGES
## CHIEF EARL BURDETTE

41. Chief Burdette had undergone open heart surgery in 2003. The following day after Chief Burdette's assault, beating, and unlawful arrest, he went for treatment of the physical injuries he had suffered. He was seen there by a physician, who referred him to Baptist Desota Hospital for chest X-rays. Chief Pettis was diagnosed as having suffered a torn chest muscle.

9

42. Chief Burdette was traumatized by the actions of the Sheriff of Panola County and his deputies, their assault, unlawful arrest, and imprisonment has caused him to suffer physical injuries, as well as extreme and severe emotional distress.

## DAMAGES
## CORNELIA FAYE PETTIS

43. Assistant Chief Pettis, as direct and proximate result of the assault to her person and unlawful imprisonment as described herein, has suffered physical injuries, mental anguish, and extreme and severe emotional distress.

## CAUSE OF ACTION

44. Sheriff Darby and deputies with the Panola County Sheriff's Department, at all times relevant were acting under color of state law and intentionally or with deliberate indifference and callous disregard of Plaintiff Burdette and Pettis's federal protected right.

45. The Sheriff and County deputies' assault and the use of excessive force was the result of the policy, practice and custom of the Sheriff's Department of Panola County, Mississippi. In addition, Defendant Sheriff and deputies' use of excessive force against Plaintiffs was the result of the policy, practice and custom of the Sheriff Department of Panola County, Mississippi to inadequately supervise and discipline law enforcement officers who use excessive force. The inadequate and negligent supervision and discipline of law enforcement officers by the Sheriff Department of Panola County, Mississippi has led to the unnecessary and illegal use of force.

46. As a direct and proximate result of the violation of their constitutional rights by the Defendants, Plaintiffs Burdette and Pettis have suffered physical, emotional and mental injuries, all of which entitles them to damages and relief under 42 U.S.C. § 1983.

## COUNT 1
## ACTION FOR DEPRAVATION OF CIVIL RIGHTS (42 U.S.C. § 1983)

47. The Plaintiffs hereby incorporate by reference and re-allege the information set forth in paragraph 1-44, supra. The Plaintiffs make the following allegations with respect to all Defendants.

48. At all times material hereto, the Defendants, both named and unnamed, were vested with authority and the non-delegable duty of adhering to, complying with, and enforcing the laws of the United States of America and the State of Mississippi. Consequently, while acting under color of state law, these Defendants commenced to engage in a course of conduct and to implement a policy, custom, usage, plan, practice, and/or design wherein the rights, privileges, and immunities of Plaintiffs were violated. Specifically these Defendants, jointly and severally, engaged in a course of conduct that resulted in the violation of Plaintiffs':

    a) right to the equal protection of the laws of the United States of America pursuant to the Fourteenth Amendment to the Constitution of the United States of America and the corresponding provisions of the Constitution of the State of Mississippi;

    b) right to procedural and substantive due process of the law specifically pursuant to the Fifth and Fourteenth Amendments to the Constitution of the United States of America and Article 3, § 14 of the Mississippi Constitution of 1890 and pursuant generally to federal and Mississippi law; and

    c) right to be free from cruel and unusual punishment pursuant specifically to Eighth and Fourteenth Amendment to the Constitution of the United States of America and Article 3, § 28 of the Mississippi Constitution of 1890 and pursuant generally to federal and Mississippi law.

## COUNT II
## ACTS OF SHERIFF DENNIS DARBY AND
## PANOLA COUNTY, MISSISSIPPI

49. The Plaintiffs hereby incorporate by reference and re-allege the information set forth in Paragraphs 1-46 supra. The Plaintiffs make the following allegations with respect to all Defendants.

50. The violations complained in this Complaint for depravation of identifiable civil rights of Plaintiffs, include, but are not limited to, the use of unreasonable force, with deliberate indifference to the immediate, grave, and serious violations of Plaintiffs' rights, all of which caused or contributed to the unjustified deprivation of Plaintiffs Burdette and Pettis' sacred rights to liberty and freedom. Additionally, Defendants, Sheriff Darby, Panola County, Mississippi, and the Panola County Mississippi Sheriff Department, failed to adequately train the Sheriff and his deputies or hire properly trained deputies, all of which caused or contributed to unjustified deprivation of Plaintiffs Burdette and Pettis' sacred rights to liberty.

51. Defendants, Sheriff Darby, and Panola County, Mississippi, and its Sheriff's Department, deliberately and/or negligently implemented a policy, custom, usage, plan, practice, and/or design wherein the rights, privileges, and immunities of Plaintiffs Burdette and Pettis were violated. Upon information and belief, prior to the subject incident, said Defendants were on notice that there was a need to properly train, instruct and supervise the deputies employed by the Panola County Sheriff's Department. However, said Defendants ignored this vital need, resulting in the unreasonable and unconstitutional custom, usage and policy in effect at the time of the injuries suffered by Chief Burdette and Assistant Chief Pettis as complained of herein. The lack of training and supervision resulted in the deprivation of the constitutional rights of the Plaintiffs Burdette and Pettis.

52. As a direct and proximate consequence of these Defendants' aforementioned conduct, wherein such defendants deprived Plaintiffs Burdette and Pettis of certain rights guaranteed by the Constitution of the United States and the of the State of Mississippi, Plaintiff Burdette and Pettis experienced pain, suffering, humiliation, degradation, unlawful imprisonment, and severe emotional and mental anguish and distress. Thus, these Defendants, both named and unnamed are jointly and severally liable for the deprivation of Plaintiffs Burdette and Pettis' constitutional rights as outlined herein.

## COUNT III
### ACTION FOR CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS (42 U.S.C. § 1985)

53. Plaintiffs hereby incorporate by reference and re-allege the information set forth in Paragraphs 1-50, supra.

54. At all times material hereto, all Defendants named and unnamed, and their agents, representatives, and employees did conspire to deprive the Plaintiffs, of the rights, privileges, and immunities guaranteed by the Constitution of the United States and the Constitution of the State of Mississippi. Specifically, these Defendants, conspired as outlined in preceding paragraphs of this Complaint, and engage in a course of conduct that resulted in the violation of Plaintiffs' rights as outlined herein above.

55. As a direct and proximate consequence of these Defendants' aforementioned conduct, wherein such Defendants conspired to deprive Plaintiffs of certain rights guaranteed by the Constitution of the United States and the Constitution of the State of Mississippi, Plaintiffs experienced pain, suffering, humiliation, degradation, unlawful imprisonment, and severe emotional and mental anguish and distress. Thus, these Defendants, both named and unnamed are jointly and severally liable for the deprivation of Plaintiffs' constitutional rights as outlined herein.

## COUNT IV
## ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

56. The Plaintiffs hereby incorporate by reference and re-allege the information set forth in Paragraphs 1-53, supra.

57. The actions and/or inactions of Defendants Panola County, its Sheriff's Department, and Sheriff Dennis Darby, his deputies and the unnamed parties, during the illegal assault, imprisonment, and denial of Plaintiffs' civil rights were reckless, intentional and so outrageous to such an extreme degree that it exceeded the bounds of decency and, thus is not tolerated by a civilized community. Plaintiffs suffered reasonably foreseeable damages as a result of these Defendants' conduct and should be compensated for this tort in form of money damages.

## COUNT V
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

58. The Plaintiffs hereby incorporate by reference and re-allege the information set forth in Paragraphs 1-55 supra.

59. Defendants intentionally and deliberately inflicted emotional distress on Plaintiffs by maliciously assaulting them, or by abusing the lawful purpose, or by violating Plaintiff's constitutional rights, or by falsely arresting and imprisoning the plaintiffs by conspiring against Plaintiffs, or by interfering with Plaintiffs civil rights by threats, coercion, or intimidation, or knew or should have known that emotional distress was likely result of their conduct.

60. Defendants conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community.

61. The actions of the Defendants were the cause of Plaintiffs' distress.

62. The emotional distress sustained by Plaintiffs was severe and of a nature that no reasonable man could be expected to endure.

63. As a result of the Defendants' extreme and outrageous conduct, Plaintiffs have suffered and will continue to suffer mental pain and anguish, severe emotional trauma, embarrassment, and humiliation.

## COUNT VI
## VIOLATION OF 42 U.S.C. § 1983: CONSPIRACY

64. The Plaintiffs hereby incorporate by reference and re-allege the information set forth in Paragraphs 1-61, supra with respect to all Defendants.

65. As a result of the concerted unlawful and malicious conspiracy of Defendants, Chief Burdette and Assistant Chief Pettis were deprived of both their liberty and without due process of law and their right to equal protection of the laws, and the due course of justice which was impeded, in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. § 1983 and 1985.

## COUNT VII
## VIOLATION OF 42 U.S.C. § 1983: UNLAWFUL DETENTION AND CONFINEMENT

66. The Plaintiffs hereby incorporate by reference and re-allege the information set forth in Paragraphs 1-63 supra.

67. As a result of their concerted unlawful and malicious detention and confinement of Chief Burdette in the Como Police Station, and thereafter in the Panola County Sheriff's office; and the detention and confinement of Assistant Chief Pettis in the Como Police Station as set forth herein, Defendants deprived Chief Burdette and Assistant Chief Pettis of their rights to their liberty without due process of law and the right to equal protection of the laws, and the course of justice was impeded, in violation of the Fifth and Fourteenth Amendment of the Constitution of the United States 42 U.S.C. § 1983.

## COUNT VIII
## VIOLATION OF 42 U.S.C. § 1983: REFUSING OR NEGLECTING TO PREVENT

68. The Plaintiffs hereby incorporate by reference and re-allege the information set forth in Paragraphs 1-65, supra.

69. At all times relevant to this Complaint, Defendants Sheriff Darby, and Jane Doe and John Doe, deputies, as officers of the Panola County, Mississippi Sheriff Department were acting under the direction and control of the Panola County Sheriff Department and Panola County, Mississippi.

70. Acting under color of law and pursuant to official custom, Defendants knowingly, recklessly, or with gross negligence failed to instruct, supervise, control, and discipline on a continuing basis their officers in their duties to refrain from:

    a.) Unlawfully and maliciously arresting, detaining, and imprisoning Plaintiffs who were acting in accordance with their statutory and Constitutional rights, privileges, and immunities;

    b.) Otherwise depriving Plaintiffs of their constitutional and statutory rights, privileges, and immunities.

## PRAYER FOR RELIEF

71. WHEREFORE, PREMISES CONSIDERED, the Plaintiffs, pray that upon the filing of this Complaint that this Honorable Court will set this matter for a full and complete trial by jury on the merits and upon completion of the same, enter a judgment granting the following relief:

    a. enter a judgment in favor of the Plaintiffs and against all Defendants, jointly and severally, for the actual or compensatory damages sustained by the Plaintiffs, pursuant to 42 United States Code sections 1983 and 1985, the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States of America, from which the Defendants did

cause the unlawful, physical pain and suffering, infliction of emotional distress, mental anguish, degradation, humiliation, and any other injury claims that may be discovered during the course of this cause which the law holds the Defendants liable and responsible in an amount to be determined by a jury, but not less than 2,500,000.00;

 b. enter a judgment in favor of the Plaintiffs and against the Defendants, and OTHER UNKNOWN JOHN and JANE DOES 1-10, Individually, jointly and severally, for punitive or exemplary damages, for the outrageous, willful, wanton and intentional conduct that resulted in gross or reckless indifference to the welfare, safety, rights, privileges, and/or immunities of the Plaintiffs, in the amount to be determined by a jury, but not less than $2,500,000.00;

 c. enter a judgment in favor of the Plaintiffs and against Defendants, jointly and severally, for damages arising from the tort of negligent infliction of emotional distress;

 d. enter a judgment against all Defendants, jointly and severally, for the Plaintiffs' reasonable attorney's fees pursuant to 42 United States section 1988, all costs of this action and related litigation expenses and expert fees; and

 e. enter a judgment in favor of the Plaintiffs and against Defendants, jointly and severally, for such other relief, general or specific, as the Court may deem appropriate, just, and equitable in the premises.

Respectfully submitted, this the 30th day of December, 2013.

                        **EARL BURDETTE and**
                        **CORNELIA FAYE PETTIS**, PLAINTIFFS

BY: _____
                        EDWARD BLACKMON, JR., MSB #3354
                        *Attorney for Plaintiffs*

OF COUNSEL:

Janessa E. Blackmon, Esq.
BLACKMON & BLACKMON, PLLC
907 West Peace Street
Post Office Drawer 105
Canton, Mississippi 39046
Telephone: 601-859-1567
Facsimile: 601-859-2311