UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**EARL BURDETTE**
**AND CORNELIA FAY PETTIS**                                                                          **PLAINTIFFS**

**v.**                                                    **CIVIL ACTION NO.: 3:13-CV314-MPM-SAA**

**PANOLA COUNTY, MISSISSIPPI, BY**
**AND THROUGH ITS BOARD OF SUPERVISORS;**
**PANOLA COUNTY SHERIFF, DENNIS DARBY,**
**IN HIS INDIVIDUAL CAPACITY AND JOHN DOES 1-10**          **DEFENDANTS**

## MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT

**NOW COMES** Panola County, Mississippi, by and through its Board of Supervisors and Panola County Sheriff, Dennis Darby, in his Individual Capacity, and submits their Memorandum in Support of Summary Judgment pursuant to *Uniform District Court* Rule 7.2, as follows:

1. **PREMISE**

The primary issue is whether the law is clearly established that a Mississippi Sheriff has superior jurisdictional authority over the investigation of a potential state law felony charge in his county. Beyond this question of law, the undisputed material facts in this case clearly establish there is no cognizable constitutional violation stated. Under the modified standard for summary judgment applicable to these facts, there is no issue for trial and dismissal is appropriate premised upon 1) qualified immunity for the individual defendants; and, 2) a failure of a cognizable constitutional theory as to official claims.

2. **BACKGROUND**

The facts are well-documented. An emergency call came to Panola SO [Dispatcher Rose Wilson]. [Exhibit K, p1]. Wilson first attempted to reach Assistant Chief Faye Pettis of Como PD,

but was unsuccessful. [Exhibit E; Exhibit K, p1). She then dispatched Deputy Eric Harris (P9) to the scene. [Exhibit E; Exhibit K, p1]. Harris was the first on the scene. [Exhibit A, p2; Exhibit E; Exhibit O]. Additional Deputies were assigned and responded. [Exhibit K, p1; ]. An investigation ensued. [Exhibit A, p2; Exhibit F; Exhibit O]. Plaintiff Pettis appeared on the scene after Harris had been on-scene for approximately 20 minutes, stayed approximately 15 minutes, then left. [Exhibit E]. She returned approximately an hour later with Chief Burdette. [Exhibit E]. A short time later, Sgt. Heath Farish of the Mississippi Bureau of Investigation (criminal investigation division of the highway patrol) arrived. [Exhibit B, p1; Exhibit E]. Deputy John Still (P12) arrived with three witnesses to the shooting. [Exhibit C, p1; Exhibit E, Exhibit F; Exhibit I, p1]. During this time a subject who had left the scene with the weapon involved in the shooting returned to the scene to turn the weapon over to the Deputies. [Exhibit E]. Two of the three witnesses were interviewed by the Deputies. [Exhibit I, p1]. Before the Panola Deputies could interview the third witness, Chief Burdette put the witness into his patrol car. [Exhibit C, p1; Exhibit E; Exhibit F; Exhibit J, p2; Exhibit I, p1]. Sheriff Darby and Detective Danny Beavers went to the Chief's car. [Exhibit E; Exhibit F]. Sheriff Darby opened the right front passenger door and stated that he needed to get a statement from the witness. [Exhibit F; Exhibit I, p1]. Burdette cursed the Sheriff and drove away from the scene (dragging the Sheriff and striking Detective Danny Beavers with the open door.). [Exhibit B, p2; Exhibit F; Exhibit I, p1].

The subsequent events and confrontation were recorded on audio. [Exhibit Q].The Panola Officers entered the Como PD, Burdette refused to cooperate, Burdette cursed and threatened force ("we didn't call you" …"you don't have authority to do shit" ... "get you damn hands off me" … "ain't gone have no tug of war shit" … "this happened in Como, this gone stay in Como" … "I'm

gone beat yo goddamn ass" …). [Exhibit Q]. The MBI officer intervened on the side of taking the witness to Batesville where both departments could interview him. [Exhibit A, p3]. The MBI office is located across the road from Panola SO. Things appeared to settle. Burdette and Pettis flared back up. Quoting the written statement of MBI Master Sergeant Farish "Then Chief Burdett grabbed at the right front pocket of Sheriff Darby's pants while shouting 'give me my pepper spray'. [Exhibit A, p3]Chief Burdette was wrestled to the top of the desk located in the interview room, where he was disarmed. [Exhibit A, p3]. Chief Burdette was placed in handcuffs for his and everyone's safety …". Chief Burdette was taken into custody. (Sheriff: "You are under arrest, Earl").

At this point, Asst. Chief Pettis jumped on the back of Chief Deputy Chris Franklin. [Exhibit F]. Detective Beavers and Lt. John Still pulled her off and briefly restrained her while Burdette was handcuffed. [Exhibit F]. Pettis was then released at the scene. Burdette was placed in a conference room at Panola SO and the handcuffs were removed. [Exhibit I, p2].

District Attorney John Champion appeared at the Sheriff's Department, met with the Sheriff and Chief (on-tape). [Exhibit Q]. The difference in tone from Chief Burdette is distinct. Chief Burdette gives his version of events (He leaves out dragging Sheriff Darby, makes it sound like the SO just busted in and tried to take over his investigation. "I get jumped in the pd where I work at, I'm the Chief of Police and I get jumped". ). Obviously, the Court is faced with differing versions between the event audio, the taped interview a short time later and now the subsequent allegations of the complaint.

    **3.    IMPACT OF AUDIO ON SUMMARY JUDGMENT**

Defendants invoke the controlling standard for consideration of summary judgment under Rule 56, *Fed. R. Civ. Proc.*; (*See* Also: Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548,

3

91 L. Ed. 2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); Impossible Elec. Tech. v. Wackenhut Protection Systems, 669 F.2d 1026, 1031 (5th Cir. 1982); Environmental Defense Fund v. Marsh, 651 F.2d 983, 991 (5th Cir. 1981); and, Southern Distributing Co. v. Southdown, Inc., 574 F.2d 824, 826 (5th Cir. 1978)).

An interesting thing happens to the standard summary judgment analysis when there is video or documentary evidence present. Although appellate courts still review evidence in the light most favorable to the nonmoving party, the United States Supreme Court has modified the standard analysis to assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene. Scott v. Harris, 550 U.S. 372, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). In Scott, the plaintiff, who was the fleeing suspect, contended that the police were culpable by employing a maneuver to stop his speeding automobile, knowing that it would cause serious injury to him. On the other hand, the suspect in Scott was clearly depicted on video endangering innocent citizens and other officers with his reckless driving. In short, this Court need not rely on the plaintiff's description of the facts where the record discredits that description but should instead consider "the facts in the light depicted" by objective evidence presented. Id. at 381.[1]

### 5. FOURTH AMENDMENT AUTHORITY

The Fourth Amendment to the United States Constitution provides that citizens have the right

---

[1] See Also Foster v. Carroll County, 502 Fed. Appx. 356, 358 (5th Cir. Miss. 2012)(The prisoner argued that his excessive force claim should have proceeded to a jury because he did not have a pellet gun in his hands when the deputy shot him in the leg. A videotape of the situation was partially obstructed and did not show his hands in the moments immediately preceding and following the shooting. However, the audio and visual portions of the videotape of the incident demonstrated that the prisoner's version of the events was a visible fiction. Viewing the videotape of the deputy's actions from the perspective of a reasonable officer, the district court correctly concluded that the deputy's actions were objectively reasonable under the circumstances.).

to be free from arrest without probable cause. Mangieri v. Clifton, 29 F.3d 1012, 1016 (5th Cir. 1994). "A warrantless arrest violates a suspect's Fourth and Fourteenth Amendment rights if the arresting officer lacks probable cause to believe that the suspect has committed a crime." Bodzin v. City of Dallas, 768 F.2d 722, 724 (5th Cir. 1985). Whether an arresting officer had probable cause depends on whether, at the time of the arrest, the facts and circumstances within the officer's knowledge would support a reasonable person's belief that the arrested individual had committed or was committing an offense. Beck v. Ohio, 379 U.S. 89, 91, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964); Hart v. O'Brien, 127 F.3d 424, 444 (5th Cir. 1997).

     The audio is clear and fully supports the arrest of Chief Burdette by the Panola County Sheriff's Department. Chief Burdette refused to turn over a witness after Sheriff Darby had already commenced an investigation, eventually speeding away with the witness while dragging the Sheriff several feet.[2] Burdette made threats to officers. Burdette pushed Deputy Danny Beavers. Burdette ordered Assistant Chief Pettis to pepper spray the deputies.[3] Master Sergeant Farish calmed the situation, however, Chief Burdette re-escalated the situation by reaching for pepper spray which was in the pants pocket of Sheriff Darby. Chief Burdette was then wrestled to the ground, disarmed, placed in handcuffs and was not free to leave.[4]

     Burdette was not charged with a crime. However it is undeniable that probable cause existed. *Miss. Code Ann* §97-3-7 defines simple assault as "attempt[ting] by physical menace to put another in fear of imminent serious bodily harm". If that assault is against a law enforcement officer, the

---

[2]Exhibit A- Incident Report by MBI Agent J. Farish 11-14-13 at 3.

[3]Exhibit A- Incident Report by MBI Agent J. Farish 11-14-13 at 3.

[4]Exhibit A- Incident Report by MBI Agent J. Farish 11-14-13 at 3.

penalty rises to the level of a felony. Probable cause exists that Burdette was committing the offense of simple assault against a law enforcement officer by stating to Sheriff Darby "I'll kick your goddamn ass", fighting with the sheriff and dragging him behind the car, ordering Darby and other officers to be pepper sprayed, subsequently lunging at Sheriff Darby in an attempt to get pepper spray out of his pocket.[5] Although the temporary detainment of Burdette was warrantless, any claim does not rise to the level of a Fourth Amendment violation.

### 6. EXCESSIVE FORCE

The remainder of Burdette's and Pettis's claims are that of excessive force. "[T]o state a violation of the Fourth Amendment prohibition on excessive force, the plaintiff must allege: (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need, and (3) the use of force that was objectively unreasonable." Bush v. Strain, 513 F.3d 492, 500-01 (5th Cir. 2008).

It is admitted that force had to be used to restrain Pettis from spraying officers with pepper spray as well as to restrain and disarm Burdette from further attack on Panola County deputies. The audio of the incident are the best evidence that Defendants did not engage in the use of force that was objectively unreasonable as a matter of law.[6]

### 6. ROLE OF A MISSISSIPPI SHERIFF

In McMillian v. Monroe County, 520 U.S. 781 (U.S. 1997) the role of an Alabama Sheriff was the central legal issue that framed the case. The U.S. Supreme Court found that Alabama

---

[5]Probable cause also existed to charge Burdette and Pettis with Miss. Code Ann §97-9-73 (resisting or obstructing arrest); to charge Pettis with Miss. Code Ann. §97-9-103 (hindering apprehension - obstruction of justice)

[6]Exhibit Q - Audio - Como Shooting Recording

sheriffs, when executing their law enforcement duties, represent the State of Alabama, not their counties. The court found that sheriffs will be characterized differently in different States. But while it might be easier to decide cases arising under §1983 and Monell if courts insisted on a uniform, national characterization for all sheriffs, such a blunderbuss approach would ignore a crucial axiom of our government: the States have wide authority to set up their state and local governments as they wish. McMillan at 794.

Here, the Complaint's jurisdictional premise and the actual words of the lead Plaintiff ("you don't have authority to do shit") present a similarly failed legal theory. *Miss Code Ann.* §45-3-21, reads in part: "The Legislature declares that the primary law enforcement officer in any county in the State of Mississippi is the duly qualified and elected sheriff thereof, ..." The Mississippi Supreme Court stated in Smith v. State, 169 So.2d 451, 251 Miss. 241, (1964), that a "sheriff is the chief law enforcement officer of county …" It is within a sheriff's discretion to investigate state law felonies and misdemeanors committed within a municipality located in a sheriff's county. 2008 WL 5506410, (Miss.A.G.), December 19, 2008. The question of which law enforcement agency has superior law enforcement authority inside a municipality is one which cannot be addressed in terms of priority. It stands without reservation that both a municipal police department and county sheriff's office have general law enforcement powers. The one great distinction of course, is that while the sheriff's authority extends to all portions of the county including all municipalities situated therein, the municipal police department is limited to the confines of the corporate limits of the municipality, except in the situation of hot pursuit. 2008 WL 5506410, (Miss. A.G.), December 19, 2008. Ultimately, however, the sheriff has the ultimate discretion to exercise his county-wide jurisdiction independently of municipal forces. Id. In the case at hand, Sheriff Darby used his discretion to

exercise his right to investigate the shooting in Como. He also exercised his right to arrest Burdette.

### 7. QUALIFIED IMMUNITY

The doctrine of qualified immunity shields a government official from civil liability for damages based upon the performance of discretionary functions, if the official's acts did not violate clearly established constitutional or statutory law of which a reasonable person would have known. Easter v. Powell, 467 F.3d 459, 462 (5th Cir. 2006). "Where, as here, a Section 1983 defendant pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion, the plaintiff then has the burden to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law." Pierce v. Smith, 117 F.3d 866, 871–72 (5th Cir. 1997) (*internal quotation omitted*). To determine whether a defendant is entitled to qualified immunity, this Court engages in a two-pronged analysis, inquiring: (1) whether the plaintiff has alleged a violation of a constitutional right and, if so, (2) whether the defendant's behavior was objectively reasonable under clearly established law at the time the conduct occurred. Easter, 467 F.3d at 462. If the plaintiff fails to state a constitutional claim or if the defendant's conduct was objectively reasonable under clearly established law, then the government official is entitled to qualified immunity. Id.

Burdette has failed to state a 4th Amendment violation, **and** the temporary detainment of Burdette by the Panola County Sheriff's department was objectively reasonable under clearly established law as explained in further detail below.

The first prong requires the plaintiff to allege "the deprivation of an actual constitutional [or statutory] right." Felton v. Polles, 315 F.3d 470, 477 (5th Cir. 2002) (*internal quotation omitted*). The plaintiff may satisfy this prong by alleging "the claimed deprivation at a higher level of

generality." Id. at 477–78.

For the second prong, by contrast, "the right . . . alleged to have [been] violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 478 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). Previous cases need not be precisely similar to the instant case, officials can be on notice that their conduct violates clearly established law in novel factual scenarios provided that the state of the law gave them "fair warning that their [conduct] was unconstitutional." Hope v. Pelzer, 536 U.S. 730, 741 (2002). Even so, "[a] defendant's acts are held to be objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff." Thompson v. Upshur County, 245 F.3d 447, 457 (5th Cir. 2001).

Under §1983, a government official can be held liable only for his own misconduct. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). Beyond his own conduct, the extent of his liability as a supervisor is similar to that of a municipality that implements an unconstitutional policy. Sheriff Darby was assaulted by Chief Burdette while attempting to do his job ("I'm gone beat yo goddamn ass"). When the local District Attorney appeared to defuse the situation after the arrest, Chief Burdette quickly shifted in the role of a racial victim. Applying the more economical focus on "Step 2" approach authorized under the recent case of Pearson v. Callahan, 129 S. Ct. 808 (2008), the individual claim against Sheriff Darby is protected by qualified immunity. The captured audio is critical here.

9

## 8. CONCLUSION

Our premise question, *whether the law is clearly established that a Mississippi Sheriff has superior jurisdictional authority over the investigation of a potential state law felony charge in his county*, has been placed in focus by understanding that the context phrase "clearly established". "Clearly established" requires an unmistakable negative answer in order for our Plaintiffs to proceed past qualified immunity. Mississippi Law has historically recognized the position of Sheriff as being the highest law enforcement officer within his or her county. Como is a municipality within Panola County. Dennis Darby is the Sheriff of Panola County. The Plaintiffs' documented words and actions on the night of this incident were simply wrong. What happens in Como, does not necessarily stay in Como. Unless the Plaintiffs establish otherwise, immunity should stop this case cold.

The audio here speaks for itself. The SO was on scene and investigating. The Chief took a witness from the scene by force. The Sheriff and deputies entered the PD to get the witness. A state officer spoke up and secured an agreement to have the witness interviewed at a neutral site. Chief Burdette then exploded again and assaulted the Sheriff. The evidence is irrefutable that the Sheriff and deputies were consistent with state law and the 4th Amendment to the United States Constitution. This is a qualified immunity case.

**WHEREFORE PREMISES CONSIDERED**, the Panola County Defendants pray that this Court will grant as follows:

(A)  Dismiss all claims pursuant to *Fed. R. Civ. Proc.* 56;

(B)  Enter Final Judgment for the Panola County Defendants in the manner required by *Fed. R. Civ. Proc.* 54(b);

Case: 3:13-cv-00314-MPM-SAA Doc #: 21 Filed: 07/02/14 11 of 11 PageID #: 106

(C) That this Court award the Panola County Defendants their attorney fees, costs and expenses associated with the defense of the instant civil action pursuant to *Fed. R. Civ. Proc.* 11 and 42 U.S.C. §1988.

**RESPECTFULLY SUBMITTED** this 2nd day of July, 2014.

                PANOLA COUNTY DEFENDANTS

                By: /s/ ***Daniel J. Griffith***
                    Daniel J. Griffith, MSB No. 8366
                    Attorney for Defendants

Of Counsel:

**GRIFFITH & GRIFFITH**
123 South Court Street
P. O. Drawer 1680
Cleveland, MS 38732
Phone No. 662-843-6100
Fax No. 662-843-8153

## CERTIFICATE OF SERVICE

I, Daniel J. Griffith, counsel of record for Panola County Defendants, do hereby certify that on this day, I electronically filed the foregoing ***Memorandum of Authorities*** with the Clerk of the Court using the ECF system which gave notification of such filing to the all counsel of record who have appeared in this action.

This the 2nd day of July, 2014.

                By: /s/ ***Daniel J. Griffith***
                    Daniel J. Griffith, MSB #8366
11