IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

EARL BURDETTE and
CORNELIA FAY PETTIS                                          PLAINTIFFS

v.                                                           No. 3:13cv314-MPM-SAA

PANOLA COUNTY, MISSISSIPPI,
by and through its board of supervisors;
DENNIS DARBY, in his individual capacity,
and JOHN DOES 1-10                                           DEFENDANTS

## ORDER

This cause comes before the court on defendants' motion for summary judgment. Having reviewed the filings, briefs, and exhibits, the court is prepared rule.

Plaintiffs Earl Burdette and Cornelia Faye Pettis work for the Como, Mississippi police department, Burdette as Chief and Pettis as Assistant Chief. Defendants are Panola County, Mississippi and Dennis Darby, the elected sheriff of Panola County. Plaintiffs allege (1) violations of 42 U.S.C. § 1983 based on excessive force, wrongful arrest, and a policy, plan or custom of using unreasonable force and failure to train; (2) conspiracy to violate 42 U.S.C. § 1983; and (3) intentional infliction of emotional distress, all arising out of events taking place on November 14, 2013. The thrust of Plaintiffs' complaint are the § 1983 excessive force and wrongful arrest claims. Defendants raise the defense of qualified immunity and seek summary judgment.

## Facts

One November afternoon in Como, Mississippi, one man insulted another, mentally retarded man. A third man took offense. He got a rifle and quarreled with the first man. A shot

rang out. The first volley fired, the skirmishers fled. Though neither of the scufflers was injured, their efforts were not entirely wasted as a fourth gentleman observer found himself shot in the leg. Such ill-plotted encounters oft lead to unforeseen contretemps. One Mr. Tracy Wilbourn, a witness, retrieved the discarded rifle, and proceeded to attempt to turn it into the Como Police. Finding the police station closed, Mr. Wilbourn called Assisstant Chief Faye Pettis to turn over the gun and provide a statement. Thus begins our adventure.

Como Police Chief Earl Burdette, off duty and minding his own business, was chopping wood on his property when he was called to respond to the aforementioned shooting in Como. Having been alerted, Chief Burdette left the woods to meet Assistant Chief Cornelia Faye Pettis at the Como police station. En route, Chief Burdette called the Mississippi Bureau of Investigation for assistance. The MBI sent agent Heath Farish, who met Chief Burdette and Assistant Chief Pettis at the police station. The three then went to meet Mr. Wilbourn at the apartments where the crime had occurred. They arrived at the crime scene to find the Panola County sheriff's department already investigating. Chief Burdette found the witness, Mr. Wilbourn, whose mother agreed to let him talk to the Como police at the police station. The witness climbed into Chief Burdette's car, and Chief Burdette started to drive away. Panola County Sheriff Dennis Darby saw Chief Burdette driving away with the witness. He yelled at Chief Burdette to stop the car so that he could interview the witness. Chief Burdette stopped to talk to Sheriff Darby, but sped off when Sheriff Darby tried to open the passenger door of Chief Burdette's car to retrieve the witness. Sheriff Darby and his deputies then went to the Como police station to get the witness back. Tensions between the Panola County Sheriff and the Como Police were escalating. Approaching the Como police station, Sheriff Darby stated, "I may be fixing to have to arrest him," presumably referring to Chief Burdette, and asked Sheriff's Deputy

Emily Griffin if she had any mace. The ensuing events do not constitute law enforcement's finest hour in Panola County.

Police Chief Burdette and Sheriff Darby already had a fraught relationship before the current conflict. Burdette had worked for the sheriff's department before Darby was elected. According to Burdette, when Darby was elected sheriff, Darby told Burdette that Burdette was no longer to talk with the former sheriff or his secretary, even though they were friends outside the office. Burdette eventually left the sheriff's office to become chief of the Como Police Department. According to Chief Burdette, Sheriff Darby warned the Como mayor not to hire Burdette as police chief, or the mayor would risk the sheriff's department not providing any support to the city of Como. Because of his mistrust of the Panola County sheriff's department, Burdette called the Tate County sheriff's department and the Mississippi Bureau of Investigation to ask for backup when needed.

This background provides context to what happened on November 14, 2013 when Sheriff Darby and his deputies went to the Como police station to get witness Wilbourn. What exactly happened inside the police station is far from clear. It is clear, however, that what should have been mutual accommodation and professional rapport among law enforcement agencies and personnel turned into a physical struggle. As Sheriff Darby walked up to the Como Police Station, he seemed to expect conflict (he asked Sheriff's Deputy Emily Griffin if she had any mace). When Sheriff Darby and Deputy Emily Griffin, who recorded audio of the conflict, arrived at the Como police station, Chief Burdette met them at the door. Chief Burdette told Sheriff Darby he could not come inside. Chief Burdette and Sheriff Darby then began wrestling. During the tussle, Chief Burdette dropped a can of mace, which Sheriff Darby picked up and put into his pocket. More sheriff's deputies arrived and joined the fray. Threats of violence flew back

and forth.[1] The witness, referring to Assistant Chief Faye Pettis, repeatedly yelled, "I want to talk to Faye. I want to talk to Faye." Finally, MBI Agent Farish briefly quelled the yelling match and suggested that the witness be interviewed on neutral territory in Batesville by both parties.

The lull did not last long, however, as Chief Burdette and Sheriff Darby once again clashed: Chief Burdette was wrestled to the table by the Panola County sheriff's department. Sheriff Darby announced, "You're under arrest, Earl." The events during and immediately before Chief Burdette's arrest are in dispute. Chief Burdette claims that he asked Sheriff Darby for his mace back and then the sheriff's deputies, unprovoked, wrestled him to the table and handcuffed him. Sheriff Darby claims that Chief Burdette grabbed for the mace and that Chief Burdette was pinned down on the table for everyone's safety. Assistant Chief Pettis was also involved in the scrum until she was wrestled away and restrained.

The audio recording of the incident does not seem to include what gave rise to Chief Burdette's arrest. By the sound of the recording, Deputy Griffin seems to have walked away until she heard a struggle and returned. At that point, Chief Burdette had been pinned down. According to Chief Burdette's complaint, it was then that Deputy Griffin jumped on top of the table where Chief Burdette was pinned and began to stomp Chief Burdette.

What happened in the Como police station is disputed, and the audio tape is far from clear. The events at the center of this lawsuit seem to be the result of a seething personal conflict and an internecine power struggle between the Panola County sheriff's department and the Como police department. Mace and handcuffs elevated picayunish strife into a federal law suit. Such facts having been alleged, it might seem impolitic of this court to deny these parties their day in

---

[1] By the Court's interpretation of the audio recording, the threats of violence were mutual. One of the sheriff's deputies seems to say, "I'll beat his…" before Chief Burdette cuts the speaker off saying, "I'll beat your god damn ass." Significantly, these threats occurred well before the arrest of Chief Burdette. Additionally, it is not clear who the speakers are and what was said. The Court hesitates to make these determinations.

court. The court now addresses Defendants' motion for summary judgment and their assertion of qualified immunity.

## Standard of Review

Summary judgment is appropriate where there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The nonmovant's evidence must be believed, and all reasonable inferences are to be drawn in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1996). The party opposing the motion "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

When a defendant properly invokes qualified immunity, the burden shifts to the plaintiff to negate it. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). To rebut the defense of qualified immunity, the plaintiff must establish, with all facts and inferences drawn in his favor, "a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Id*.

## Qualified Immunity

Qualified immunity shields a governmental official from suit based on the performance of discretionary functions if the official's acts did not violate clearly established constitutional or statutory law of which a reasonable person would have known. *Easter v. Powell*, 467 F.3d 459, 462 (5th Cir. 2006). In determining whether a defendant is entitled to qualified immunity, the court engages in a two-pronged analysis, inquiring (1) whether the plaintiff has alleged a violation of a constitutional right and, if so, (2) whether the defendant's behavior was objectively reasonable under clearly established law at the time the conduct occurred. *Easter*, 467 F.3d at 462. If the plaintiff fails to state a constitutional claim or if the defendant's conduct was

objectively reasonable under clearly established law, then the governmental official is entitled to qualified immunity. *Id.*

   A. *Excessive Force*

For an excessive-force claim, plaintiff clears the first prong of the qualified-immunity analysis at the summary-judgment stage by showing a genuine dispute of material fact for whether plaintiff sustained: "(1) an injury (2) which resulted from the use of force that was clearly excessive to the need and (3) the excessiveness of which was objectively unreasonable." *Rockwell v. Brown,* 664 F.3d 985, 991 (5th Cir.2011) (quoting *Hill v. Carroll Cnty.,* 587 F.3d 230, 234 (5th Cir.2009)). The underlying intent or motivation of the officer is immaterial to this inquiry. *Id.* at 991.

Here, Plaintiffs have alleged injury and they have created a genuine question of material fact as to whether the use of force was excessive to the need and was objectively unreasonable. According to Chief Burdette, Sheriff Darby and his deputies came into the police station demanding to speak with the witness Chief Burdette had carried from the scene. When Chief Burdette refused to allow Sheriff Darby to interview the witness in question, Sheriff Darby and his deputies attacked Burdette, pushed him onto a table and struck him. Plaintiffs also allege that Deputy Emily Griffin jumped onto the table and began to stomp Chief Burdette. The audio tape recording evidences immediate and intense verbal aggression from both sides when Sheriff Darby arrived at the police station. Crucially, the audio tape does not include what immediately preceded Chief Burdette being wrestled to the table and handcuffed, nor does it show the physical violence. This case also differs from most other excessive force claims because the force was law enforcement against law enforcement. The plaintiffs were not criminal suspects nor did they seem to be endangering the public. It is arguable whether the plaintiffs did anything

that necessitated such a forceful response. At this juncture, the Court cannot say that the actions of Sheriff Darby and his deputies were objectively reasonable and not excessive to the need. Therefore, Plaintiffs have created a genuine question of material fact as to prong one of the qualified-immunity analysis for the excessive-force claim.

For the second prong at the summary-judgment stage, plaintiff must show a genuine dispute of material fact for two distinct, but related, elements: 1) whether the allegedly violated constitutional rights were *clearly established at the time of the incident*, and, if so 2) whether the defendant's conduct was *objectively unreasonable* in light of the clearly established law. *Hare v. City of Corinth,* 135 F.3d 320, 326 (5th Cir.1998) (first emphasis in original) (second emphasis added).

The Fourth Amendment to the U.S. Constitution guarantees citizens the right "to be secure in their persons…against unreasonable…seizures" of the person. Claims of excessive force are judged under an "objective reasonableness" standard, balancing the individual's interest in being free from unreasonable force and the government's interest in the safety of the officers and public. *Graham v. Connor*, 490 U.S. 386, 396 (1989). This inquiry is made from the perspective of a reasonable officer at the time force was used, and the subjective intent or motivation of the officer is immaterial. *Id*. at 396-97.

The current case involves an uncommon factual scenario: a law enforcement officer arresting another law enforcement officer during an ongoing investigation of another crime. Accepting the Plaintiffs' allegations as true, there remains a genuine question of material fact whether Sheriff Darby and his deputies acted reasonably. The audio recording of the event provided to the Court does not contain what happened immediately before Chief Burdette was wrestled to the table and arrested. According to Chief Burdette, Sheriff Darby and his deputies

arrested him without provocation. The audio recording does not directly and definitively contradict this assertion. Wrestling a person down to a table, pinning him down, stomping on him, and handcuffing him when that person poses no safety threat is clearly unreasonable. An objectively reasonable officer should understand this. Therefore, summary judgment on the excessive-force claim will be denied.

*B. Wrongful Arrest*

To establish that Sheriff Darby and his deputies violated plaintiffs' constitutional rights by arresting them, plaintiffs must show that the officer lacked probable cause (a warrantless arrest must be based on probable cause). *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). Probable cause exists when the totality of the facts and circumstances known by the officer at the moment of the arrest are "sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Resendiz v. Miller*, 203 F.3d 902, 903 (5th Cir. 2000).

Defendants argue that Chief Burdette committed the offense of simple assault, and thus had probable cause to arrest him. Defendants cite the following as evidence of probable cause: Chief Burdette "stating to Sheriff Darby 'I'll kick your goddamn ass,' fighting with sheriff and dragging him behind the car, ordering [Sheriff] Darby and other officers to be pepper sprayed, subsequently lunging at Sheriff Darby in an attempt to get pepper spray out of his pocket." The one indisputable fact, made clear by the audio recording, is that Chief Burdette stated "I'll kick your goddamn ass," but it is unclear to whom he said it. The rest of the facts alleged by the defendants are denied or disputed by the plaintiffs.

The question becomes whether the statement "I'll kick your goddamn ass," rises to the level of probable cause to arrest Chief Burdette for simple assault. In making this determination, it is important to highlight certain facts. First, this was a conflict between law enforcement

officers, not between an officer and a suspect of a crime. Second, while not directly bearing on the probable cause determination, Chief Burdette was never charged with a crime. Third, Chief Burdette seems to make this statement reactively and in retort to a similar threat by, presumably, Sheriff Darby or one of the sheriff's deputies. Finally, Chief Burdette was not immediately arrested after this statement. Several minutes passed, with a calm period between when Chief Burdette made the statement and when he was arrested. It strikes the court that if Sheriff Darby was in fear of imminent serious bodily harm after the statement, he should have arrested Chief Burdette immediately. In the above context, the court questions the legitimacy and imminence of the "threat." In sum, based on the context and because of the disputed facts, a genuine question of material fact remains as to whether Sheriff Darby had probable cause to arrest Chief Burdette and defendants' motion for summary judgment on the wrongful arrest claim will be denied.

*C. Remaining Claims*

Both parties focus their briefings on violations of 42 U.S.C. § 1983 based on unlawful detention and excessive force. If defendants wish to pursue dismissal of the remaining claims (violation of 42 U.S.C. § 1983 based on policy, plan or custom; conspiracy to violate 42 U.S.C. § 1983; and intentional infliction of emotional distress), the Court would ask them to file additional briefing regarding those claims.

For the forgoing reasons, Defendants' motion for summary judgment based on qualified immunity [19] is DENIED.

So ORDERED this the 20th day of October, 2014.

                                        **/s/ MICHAEL P. MILLS**
                                        **UNITED STATES DISTRICT JUDGE**
                                        **NORTHERN DISTRICT OF MISSISSIPPI**